1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHARONDA BELL,

                Plaintiff,

    v.

ADDUS HEALTHCARE, INC.,

                Defendant.

CASE NO. C06-5188RJB

ORDER DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING IN PART AND
DENYING IN PART
PLAINTIFF'S MOTION TO
STRIKE

       This matter comes before the Court on the defendant's Motion for Summary Judgment

(Dkt. 76) and the motion to strike contained in the plaintiff's response (Dkt. 86). The Court has

considered the pleadings filed in support of and in opposition to the motions and the remainder of

the file herein.

## I. FACTUAL BACKGROUND

       The parties contest several factual issues. The following is a recitation of the facts taken in

the light most favorable to plaintiff Sharonda Bell. The Court has indicated contested factual

issues as appropriate.

       Ms. Bell is a former employee of defendant Addus HealthCare, Inc. ("Addus

HealthCare"). The parties dispute the plaintiff's dates of employment. According to Ms. Bell, her

employment began at the defendant's Oregon office as a care giver in 2001. In 2002, she was

transferred to the defendant's office in Vancouver, Washington to work as an office assistant and

1   care giver. According to Addus HealthCare, Ms. Bell's employment as a home care aid began on

2   July 18, 2002, in the Oregon office, and she was transferred to work as a home care aid in the

3   Vancouver office on June 21, 2003. Dkt. 76 at 3.

4        Ms. Bell was terminated on May 25, 2005. Dkt. 86 at 13. During the last year of Ms.

5   Bell's employment with Addus HealthCare, she joined the Service Employees International Union

6   ("the SEIU"). Dkt. 86 at 9. The Collective Bargaining Agreement ("the Agreement") between the

7   SEIU and Addus HealthCare contained a grievance procedure providing a dispute resolution

8   process that includes arbitration. Dkt. 86 at 9, Dkt. 76 at 3. Ms. Bell contacted her union steward

9   regarding her termination but concedes that she did not exhaust this procedure with regard to her

10  claims in this suit. Dkt. 86 at 9.

11       While in the Vancouver office, Ms. Bell worked to answer phones, answer questions of

12  people who visited the office, and make appointments. Dkt. 76 at 4, Dkt. 86 at 9, 14. Ms. Bell

13  was also available for dispatch to handle emergency care needs. Dkt. 86 at 14.  Ms. Bell

14  sometimes took rest breaks of no more than five minutes each when her schedule permitted. Dkt.

15  76 at 5, Dkt. 86 at 9. She was unable to take a meal period unless another employee was present

16  in the office because she could not leave the front desk unattended. Dkt. 76 at 5, Dkt. 86 at 10.

17  The parties contest the frequency with which Ms. Bell took her breaks and whether she was paid

18  for her breaks and missed meal periods. Dkt. 76 at 5, Dkt. 86 at 10.

19       Ms. Bell also worked in the field as a home care aid. Her duties included cooking, running

20  errands, and providing personal care. Dkt. 76 at 6. Ms. Bell was required to record when she

21  arrived at and left each client's home and to complete a checklist to indicate which tasks she

22  performed. Dkt. 86 at 10. The time sheets were then signed by Ms. Bell's supervisor. *Id.* at 11.

23  Ms. Bell contends that these time sheets were altered. *Id.* Ms. Bell's work hours varied. Dkt. 76

24  at 7. She would sometimes work fewer than eight hours and would work up to twelve hours at

25  other times. *Id.* According to Ms. Bell, she was not allowed to leave clients alone and was

26  therefore unable to take meal and rest periods while working in the field. Dkt. 86 at 12.

27

28

ORDER
Page 2

1    Although Addus HealthCare's practice is to reimburse employees for their mileage

2    between clients' homes, Ms. Bell contends that she was not fully reimbursed for her mileage. Dkt.

3    86 at 11. Addus HealthCare contends that she was reimbursed. Dkt. 32-1 at 5. The parties dispute

4    whether Ms. Bell earned more than minimum wage for time spent driving in connection with her

5    work as a home care aid. Dkt. 76 at 7, 86 at 11.

6                              **II. PROCEDURAL BACKGROUND**

7    On April 14, 2006, Ms. Bell filed a complaint in federal court, alleging that Addus

8    HealthCare violated Washington and Oregon law by failing to provide rest breaks and meal

9    periods, failing to pay overtime wages, failing to pay all wages when due upon termination, and

10   breaching the duty of good faith and fair dealing. Dkt. 1. Ms. Bell seeks damages and a permanent

11   injunction on behalf of herself and a class that has not yet been certified. *Id.* at 13, 25.

12   On October 17, 2006, defendant Addus HealthCare, Inc. ("Addus HealthCare") filed a

13   Motion for Summary Judgment (Dkt. 30) that is substantially similar to the instant motion. The

14   Court held that the motion appeared to be "an attempt to address jurisdictional and class

15   representative issues in accord with paragraphs (1) and (8) of the court's scheduling and

16   discovery order (Dkt. 18)" and ordered that the motion be stricken as premature. Dkt. 69 at 2, 3.

17   The Court hoped that the parties would confer and resolve jurisdictional issues, including whether

18   the Court lacks subject matter jurisdiction by virtue of the plaintiff's alleged failure to exhaust

19   contractual remedies, without the need for motion practice. On February 7, 2007, the parties filed

20   their Second Amended Joint Status Report, in which Addus HealthCare states that "no issue as to

21   jurisdiction remains before the court." Dkt. 88 (Joint Status Report) at 3.  Unfortunately, the

22   parties appear unwilling or unable to address jurisdictional issues on their own, and the Court will

23   therefore proceed on the defendant's motion. The Court notes that while the motion professes to

24   address all of the plaintiff's claims, it offers arguments relating only to Ms. Bell's claims that she

25   was denied meal and rest periods in violation of Washington and Oregon law. *See* Dkt. 76 at 2.

26

27

28

### III. DISCUSSION

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B. MOTION TO STRIKE**

Ms. Bell moves to strike the declaration of Tess Cannon (Dkt. 32-1) pursuant to Local Rule CR 7(g). Dkt. 86 at 2. Ms. Bell moves to strike paragraphs three through six and eight through eleven of Tess Cannon's declaration on the grounds that the declaration is not based on personal knowledge as required by Federal Rule of Civil Procedure 56(e), lacks foundation, contains inadmissible hearsay, and violates the Best Evidence Rule. Dkt. 86 at 2, 4. With the exception of the last statement of the third paragraph and the first sentence of the fourth paragraph, the plaintiff fails to specifically identify what portions of the declaration she seeks to strike. This omission has made it difficult to apply the plaintiff's arguments to Ms. Cannon's declaration.

Plaintiff's counsel notified the Clerk's Office that a surreply would be filed regarding the Motion for Summary Judgment. On February 15, 2007, Plaintiff's counsel filed Plaintiff's Reply in Support of Motion to Strike Portions of the Declaration of Tess Cannon (Dkt. 92), which was intended to be a reply on the plaintiff's motion to strike. In the interest of fairness to both parties, the Court has reviewed the surreply and considered only those arguments made in strict reply to the defendant's response to the motion to strike.

**1. Personal Knowledge**

Federal Rule of Civil Procedure 56 provides that affidavits must be made on personal knowledge: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Federal Rule of Evidence 602 also requires that witnesses have personal knowledge:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.

Fed. R. Evid. 602.

Ms. Bell contends that because Tess Cannon was not employed with Addus HealthCare until July of 2004, she lacks personal knowledge of many aspects of Ms. Bell's employment. Dkt.

86 at 4. Ms. Bell contends that Ms. Cannon lacks personal knowledge as to when Ms. Bell was hired to work in the Vancouver office, whether and when she joined the SEIU, whether the plaintiff took breaks or meal periods, and whether the plaintiff was paid accurately and above minimum wage. Dkt. 86 at 2, 4.

In the declaration, Ms. Cannon concedes that her statements are largely based upon her review of "Ms. Bell's wage and hour records." *See, e.g.* Dkt. 32-1 at 2. According to Ms. Cannon's third declaration (Dkt. 90-1), Ms. Cannon accessed documentation pertaining to Ms. Bells's date of hire, date of termination, union start date, hours worked and compensation earned, and the Collective Bargaining Agreement in force and effect at the time of Ms. Bell's employment with Addus HealthCare. Dkt. 90-1 at 2. Ms. Cannon does not describe these documents or offer copies for the Court's review. The Court is therefore unable to discern whether such documents constitute evidence sufficient to support a finding that Tess Cannon has the requisite personal knowledge as provided in Federal Rule of Evidence 602. Statements based upon personal knowledge gleaned only from Ms. Bell's wage and hour records must therefore be stricken.

Ms. Cannon does offer an exhibit evidencing the dates on which Ms. Bell was hired, was terminated, and joined the SEIU. Dkt. 90-2. The declaration identifies the exhibit solely as "the document confirming items 1-3" of the declaration. Dkt. 90-1 at 2. The defendant fails to provide any information as to what this document is or how it was obtained. The defendant therefore fails to demonstrate that the document or the facts it contains would be admissible in evidence. The Court should therefore exclude statements in Ms. Cannon's declaration based solely upon her review of this document.

### a. Fifth Paragraph of Cannon Declaration

In the fifth paragraph of her declaration, Ms. Cannon declares as follows:

> When Ms. Bell worked in the office, she was provided the opportunity to take rest breaks regardless of whether she was working alone or with another office worker. The decision on whether to take a rest break or not would have been Ms. Bell's decision. Ms. Bell's shift in the Vancouver office was normally 6 hours or less in duration. Based upon my review of the wage and hour records for Addus, Ms. Bell was paid for each and every rest break while she worked in the office of Addus in Vancouver, Washington.

Dkt. 32-1 at 5. Ms. Cannon does not demonstrate that she has personal knowledge of whether

1    Ms. Bell had the opportunity to take rest breaks. She does not demonstrate that she worked with

2    Ms. Bell or otherwise has a basis for knowing that it was Ms. Bell's decision whether to take

3    breaks. Her knowledge of Ms. Bell's compensation is based solely on her review of documents

4    not identified or provided to the Court. Paragraph five of Ms. Cannon's declaration should

5    therefore be stricken as not based on personal knowledge.

6              **b. Sixth Paragraph of Cannon Declaration**

7          In the sixth paragraph of her declaration, Ms. Cannon declares as follows:

8          With regard to meal periods, Ms. Bell would have been completely relieved from duty
           during this time and therefore should have been able to obtain a meal period or engage in
9          personal pursuits. Based upon my review of the wage and hour records for Addus, Ms.
           Bell was paid for all missed meal periods.

10   Dkt. 32-1 at 5. Ms. Cannon offers no basis for knowing whether Ms. Bell was relieved from duty

11   and able to take a meal period, and her knowledge of Ms. Bell's compensation is based solely on

12   her review of documents not identified or provided to the Court. Paragraph six of Ms. Cannon's

13   declaration should therefore be stricken as not based on personal knowledge.

14             **c. Eighth and Ninth Paragraphs of Cannon Declaration**

15         The eighth and ninth paragraphs of Ms. Cannon's declaration concern mileage

16   reimbursement and Ms. Bell's hourly wage. These paragraphs appear to be based solely upon Ms.

17   Cannon's review of wage and hour records and should be stricken.

18             **d. Tenth Paragraph of Cannon Declaration**

19         In the tenth paragraph of her declaration, Ms. Cannon declares as follows:

20         When Ms. Bell worked for Addus, in particular as a homecare aide out in the field . . . by
           definition Ms. Bell's activities were not supervised and her rest breaks were not scheduled.
21         Nevertheless, the nature of the work should have allowed Ms. Bell to obtain intermittent
           rest breaks every three (3) hours of at least 15 minutes per Addus' policy for which Ms.
22         Bell was paid. Further, Ms. Bell never complained to anyone associated with Addus that
           she was not being provided appropriate rest breaks. If Ms. Bell decided not to take a rest
23         break that would have been her choice freely made. Addus certainly does not prohibit or
           compromise the ability of one of our nonexempt employees to obtain relief from work or
24         exertion as required under the applicable law. Based upon my review of the wage and
           hour records, whether Ms. Bell decided to take a rest break or not, she was paid for this
25         time.

26

27   Dkt. 32-1 at 6. The fact that Ms. Cannon is the Agency Director for Addus HealthCare's

28

1   Vancouver office is evidence sufficient to support a finding that Ms. Cannon has personal

2   knowledge of the definition of Ms. Bell's job, the nature of her work, and the company's policies.

3   Ms. Cannon does not establish that she has knowledge of whether and to whom employee

4   complaints are made, whether Ms. Bell missed rest breaks by choice, and whether Ms. Bell was

5   paid for her rest breaks. The third, fourth, and sixth sentences of the tenth paragraph should

6   therefore be stricken as not based on personal knowledge.

7                    **e. Eleventh Paragraph of Cannon Declaration**

8          In the eleventh paragraph, Ms. Cannon declares as follows:

9          While working as a homecare aid out in the field performing domestic and companionship
           services for our clients in their homes, Ms. Bell would have been able to obtain a meal
10         period between the second and fifth hour of her shift either in the client's home or during
           travel time between various client's homes. Based upon my review of the wage and hour
11         records, whether Ms. Bell decided to take a meal period or not, she was paid for this time.

12  Dkt. 32-1 at 6. Ms. Cannon offers no basis for knowing if and when Ms. Bell was able to take a

13  break from her shift and whether she was paid for missed meal periods. This paragraph should be

14  stricken.

15         **2. Hearsay**

16         Hearsay is defined as a "a statement, other than one made by the declarant while testifying

17  at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid.

18  801(c). Ms. Bell contends that Ms. Cannon's statements about the contents of Addus

19  HealthCare's records are inadmissible hearsay. The defendant contends that "payroll and

20  personnel files" are Records of Regularly Conducted Activity under Federal Rule of Evidence

21  803(6). In Ms. Cannon's third declaration, Ms. Cannon states that the documentation she

22  references "was generated in the ordinary course of business on or about the dates appearing

23  thereon, according to practices and procedures of the company, all of which I am familiar with."

24  Dkt. 90-1 at 2. Unfortunately, Ms. Bell does not identify the explicit statements she seeks to

25  exclude. The plaintiff therefore fails to demonstrate that any of Ms. Cannon's declaration

26

27

28

1  constitutes hearsay. The Court should decline to strike statements from Ms. Cannon's declaration
2  on this basis.

3        **3. Best Evidence Rule**

4        Federal Rule of Evidence 1002, the Best Evidence Rule, provides as follows: "To prove
5  the content of a writing, recording, or photograph, the original writing, recording, or photograph
6  is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid.
7  1002. Ms. Bell contends that Ms. Cannon's declaration violates the Best Evidence Rule. Ms.
8  Cannon's testimony, while based on certain Addus HealthCare records, does not appear to be an
9  attempt to prove the contents of those records. The Court should decline to strike the declaration
10 on this basis.

11 **C. EXHAUSTION OF CONTRACTUAL REMEDIES**

12       Ms. Bell admits that she did not exhaust the grievance procedure provided by the
13 Collective Bargaining Agreement before commencing suit against Addus HealthCare but contends
14 that the procedure does not govern her claims because they are non-negotiable, state-law based,
15 and independent from the Agreement. Dkt. 86 at 15. Generally, employees must exhaust the
16 grievance procedure provided by a binding collective bargaining agreement before seeking judicial
17 relief. *Ervin v. Columbia Distributing, Inc.*, 84 Wn.App. 882, 887 (1997); *Gilstrap v. Mitchell*
18 *Bros. Truck Lines*, 270 Or. 599, 606 (1974). An employee may avoid this exhaustion requirement
19 if she demonstrates that the union has breached its duty of fair representation or that use of the
20 grievance procedure would be futile. *Ervin*, 84 Wn.App. at 887. The exhaustion requirement
21 applies only to employees "who allege violation of a labor contract." *See id*; *Wilson v. City of*
22 *Monroe*, 88 Wn.App. 113, 115 (1997) ("When an employee brings a claim against an employer
23 based on nonnegotiable, substantive rights that are not dependent on a collective bargaining
24 agreement (CBA), the employee is not first required to exhaust the remedies provided by a CBA
25 arbitration clause.").

26       The defendant cites *Moran v. Stowell*, 45 Wn.App. 70, 76 (1986), and *Gilstrap*, 270 Or.
27 at 606, for the proposition that all employee claims must proceed through collective bargaining
28

1  agreement procedures. In *Moran*, the court stated the general rule as follows: "Before an action

2  **to obtain the benefits of a collective bargaining contract** can be maintained, the plaintiff must

3  exhaust his contractual remedies through the grievance procedure provided for in the contract."

4  *Id.* at 75 (emphasis added). The *Moran* plaintiffs were suing for reimbursement of accrued,

5  unused sick leave. *Id.* at 71. The relief they sought was governed by, not independent from,

6  collective bargaining agreements. *Id.* at 72 ("sick leave benefits were governed by a series of

7  collective bargaining agreements"),76 ("relief sought regarding sick leave benefits available

8  pursuant to the appellants' employment terms and conditions "), 81 ("denial of compensation for

9  the appellants' unused sick leave was based upon the provisions of the collective bargaining

10 agreement and the applicable county ordinance"). Similarly, the plaintiffs in *Gilstrap* were

11 "asserting rights based on the lease, the collective bargaining agreement, and oral promises."

12 *Gilstrap*, 270 Or. at 604.

13        The Collective Bargaining Agreement in this case is explicitly limited to rights provided by

14 the employee handbook and the Agreement itself. Article 18 of the Agreement provides a

15 grievance procedure and defines grievances:

16        A grievance is hereby defined as a claim against, or dispute with, the Employer by an
          employee or the Union representative **involving an alleged violation by the Employer**
17        **of the terms of this Agreement and/or the Employee Handbook**. An individual
          employee or group of employees shall have the right to present grievances and to have
18        such grievances adjusted without involvement of the Union, as long as the adjustment is
          not inconsistent with the terms of this Agreement and/or the Employee Handbook and the
19        appropriate Union representative has been given the opportunity to present at such
          adjustment.
20
21 Dkt. 77-2 at 15 (emphasis added). Addus HealthCare has failed to demonstrate which, if any, of

22 the plaintiff's claims arise from rights created by the Collective Bargaining Agreement or the

23 employee handbook and therefore constitute grievances as defined by the Agreement such that the

24 plaintiff was required to exhaust the Agreement's grievance procedure. The Court should

25 therefore decline to enter summary judgment on this basis.

26

27

28

**D. DOMESTIC SERVICE EXEMPTION**

Under Oregon law, certain employees are exempt from Oregon laws establishing minimum employment conditions:

ORS 653.010 to 653.261 do not apply to any of the following employees:

. . .

(14) An individual employed in domestic service employment in or about a family home to provide companionship services for individuals who, because of age or infirmity, are unable to care for themselves.

Or. Rev. Stat. §653.020(14). Addus HealthCare contends that Ms. Bell is precluded by Or. Rev. Stat. §653.020 from asserting certain claims under Oregon law because she fits this exemption. Dkt. 76 at 14. Ms. Bell contends that this exemption applies only where the employee works in the home of her employer; because she was employed by Addus HealthCare, Ms. Bell contends that she does not fit within this exemption. Dkt. 86 at 18.

"Domestic service" is defined by regulation:

As used in ORS 653.010 to 653.261 and these rules, unless the context requires otherwise:

. . .

(13) "Domestic service" means services of a household nature performed by an employee in or about a family home (permanent or temporary) **of the person by whom the employee is employed**. The term includes, but is not limited to, employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, gardeners, and companions to the elderly and infirm.

Or. Admin. R. 839-020-0004(13) (emphasis added). The parties do not dispute that Ms. Bell was employed by Addus HealthCare, and the defendant offers no evidence that Ms. Bell worked in the family home of the person by whom she was employed. The Court should therefore decline to grant summary judgment on this basis.

**E. MEAL AND REST PERIODS UNDER WASHINGTON LAW**

Addus HealthCare contends that summary judgment is warranted because Ms. Bell was compensated for all meal and rest periods. Dkt. 76 at 14.

**1. Meal Periods**

Addus HealthCare contends that summary judgment is appropriate in this case because Ms. Bell was paid for all missed meal periods and that Ms. Bell missed meal periods only because she voluntarily waived such meal periods. Dkt. 76 at 21.

By regulation, Washington employees are entitled to a meal period:

> (1) Employees shall be allowed a meal period of at least 30 minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.
>
> (2) No employee shall be required to work more than five consecutive hours without a meal period.

WAC 296-126-092. As interpreted by the Washington State Department of Labor and Industries, the meal period must be paid if the employee is on the premises or at the work site and required to act in the interests of the employer during the meal period. Wash. State Dep't of Labor and Indus., No. ES.C.6, *Meal and Rest Periods for Nonagricultural Workers Age 18 and Over* 3 (2002), http://www.lni.wa.gov/WorkplaceRights/files/policies/esc6.pdf.[1] The employer may not prevent employees from taking a meal period but is under no affirmative duty to schedule a meal period for a specific time. *White v. Salvation Army*, 118 Wn.App. 272, 279 (2003). In addition, the employer need not reduce employees' duties during the meal period. *See id.* at 278. The meal period may be interrupted so long as the employee receives thirty total minutes of mealtime. Wash. State Dep't of Labor and Indus., No. ES.C.6, *Meal and Rest Periods for Nonagricultural Workers Age 18 and Over* 3-4.

Ms. Bell testified in her depositions that she did not know whether she had been paid for missed meal periods. *See, e.g.,* Dkt. 87, Exh.1 at 38, 64, 73. Ms. Cannon's statement that Ms. Bell was paid for all missed meal periods was stricken as not based on personal knowledge. Dkt. 32-1 at 5. There is a genuine issue of material fact as to whether Ms. Bell's missed meal periods were paid, and the plaintiff has yet to establish what damages she suffered.

Ms. Bell alleges that even if her meal periods were paid, she was not always allowed a

---

[1] Both parties cite Washington Department of Labor and Industries Administrative Policy ES.C.6 (2002) but have not provided the Court with a copy of this document. The Court was able to locate the policy online.

ORDER
Page 12

1  meal period. *See* Dkt. 87, Exh. 1 at 63-64 (not able to eat lunch while alone at the office), 72 (not
2  able to eat lunch while working in the field). She contends that she was required by the employee
3  handbook to seek supervisor approval of meal periods, citing page four of the handbook. Dkt. 86
4  at 10, 21. The handbook does not appear to explicitly impose any such requirement. Ms. Bell
5  further contends that her work in the field was such that she was required to arrive at clients'
6  homes at a particular time, leaving no time for her to take a meal period. Dkt. 87, Exh. 1 at 93.
7  While Addus HealthCare contends that Ms. Bell's failure to take a meal period constitutes a
8  waiver, there are genuine issues of material fact as to whether Ms. Bell was actually allowed to
9  take meal periods while working in the Vancouver office and in the field. The Court should
10  therefore decline to enter summary judgment on these claims.

11      **2. Rest Periods**

12      Washington employees are entitled to a ten minute rest period, on the employer's time, for
13  every four hours of work. WAC 296-126-092(4). Such rest periods need not be scheduled if the
14  employee is permitted to take intermittent rest periods equivalent to ten minutes. WAC 296-126-
15  092(5).

16      In her deposition, Ms. Bell testified that she was able to take five minute rest breaks while
17  working in the Vancouver office and that she took more than two in an eight hour shift. Dkt. 87,
18  Exh.1 at 39. She testified that she was not always able to get the requisite number of rest periods.
19  *Id.* at 50. With regard to her work in the field, Ms. Bell testified that she was never truly allowed
20  a rest period because she was required to keep clients in her sight at all times. *Id.* at 53, 61, 76. In
21  her declaration, Ms. Cannon states that Ms. Bell should have been able to take rest breaks in light
22  of the nature of her work. Dkt. 32-1 at 6. These sworn allegations are sufficient to create a
23  genuine issue of material fact on the claim for missed rest periods. The motion should therefore be
24  denied in this respect.

25  **F. ADEQUACY UNDER FEDERAL RULE 23(a)(4)**

26      Ms. Bell contends that she will "fairly and adequately protect the interests of the class" as
27  required under Federal Rule 23(a)(4). Dkt. 86 at 22. The plaintiff has not yet moved to certify a
28  class, and the Court should decline to rule on whether the plaintiff satisfies one or more of the

ORDER
Page 13

1  elements required for class certification.

2  **IV. ORDER**

3      Therefore, it is hereby

4      **ORDERED** that the defendant's Motion for Summary Judgment (Dkt. 76) is **DENIED**.

5  The plaintiff's Motion to Strike (Dkt. 86) is **GRANTED in part** and **DENIED in part** as

6  provided herein.

7      The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel

8  of record and to any party appearing *pro se* at said party's last known address.

9

10

11                      Robert J. Bryan
                        United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page 14