UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHARONDA BELL,

                Plaintiff,

      v.

ADDUS HEALTHCARE, INC.,

                Defendant.

CASE NO. C06-5188RJB

ORDER DENYING PLAINTIFF'S
CROSS MOTION FOR CLASS
CERTIFICATION UNDER FRCP
23(c)(1)

     This matter comes before the court on the Plaintiff's Cross Motion for Class Certification under FRCP 23(c)(1) (Dkt. 98) and Defendant's Motions to Strike Inadmissable Evidence (Dkt. 197). The court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file herein.

## I. FACTUAL BACKGROUND

     Plaintiff Sharonda Bell is a former employee of Defendant Addus Healthcare, Inc., ("Addus"). Dkt 134. The parties dispute Ms. Bell's dates of employment. According to Ms. Bell, her employment as a home care aide began in 2001 at Addus' Oregon office and, in 2002, she transferred to Addus' office in Vancouver, Washington, to work as an office assistant and care giver. Deposition of Sharonda Bell ("Bell Dep."), Dkt 130, Ex. #2 at 10. According to

1   Addus, Ms. Bell's employment as a home care aide began on July 18, 2002, in the Oregon office,

2   and she was transferred to work as a home care aid and to occasionally work in the district office

3   in Vancouver on June 21, 2003.  Dkt. 76 at 3.  It is undisputed that, in 2005, Addus terminated

4   Ms. Bell in Washington after a background check revealed that Ms. Bell was disqualified from

5   working for Addus under the rules of the Washington Department of Social and Health Services.

6   Bell Dep. at 20-21.

7          Ms. Bell alleges that Addus' violated Washington and Oregon wage and hour laws.  Dkt.

8   1; Dkt. 98.  Ms. Bell also alleges that Addus' violations affected many current and former

9   employees of Addus.  *Id.*  During pre-certification discovery, Addus provided Ms. Bell with a list

10  of current and former employees and Ms. Bell sent questionnaires to those employees.  Dkt. 98 at

11  11.  On the questionnaires, Ms. Bell stated various Oregon and Washington wage and hour laws

12  and asked each respondent whether he or she had received rest breaks, meal breaks, overtime pay,

13  wages for all hours worked, and timely final paycheck.  *See* Dkt. 103, Ex. B at 1 ("Wash.

14  questionnaire"); Dkt. 103, Ex. C at 1 ("Or. questionnaire").  Ms. Bell contends that numerous

15  current and former employees completed the questionnaires and returned them to Ms. Bell's

16  counsel.  Dkt. 103, ¶¶ 3-4.

17

18                          **II. PROCEDURAL BACKGROUND**

19          On April 14, 2006, Plaintiff filed the complaint alleging that Defendant violated

20  Washington and Oregon law by failing to provide rest breaks and meal periods, failing to pay

21  overtime wages, failing to pay all wages when due upon termination, and breaching the duty of

22  good faith and fair dealing.  Dkt. 1.  Plaintiff seeks damages in excess of five million dollars on

23  behalf of herself and putative class members.  *Id.* at 13, 25.

24          On February 22, 2007, Defendant filed a Motion for Order Under Fed. R. Civ. P. 23(d) in

25  re Communication with Putative Class Members.  Dkt. 93.  In her response to that motion,

26  Plaintiff moved for class certification "as to each and every claim contained in the complaint."

27  Dkt. 98 at 10.  The Court re-noted the Plaintiff's Cross Motion for Class Certification (Dkt. 98)

28

1  so that briefing on the motion would proceed in accordance with Local Rule CR 7.  Dkt. 105.

2      Pursuant to the parties' joint request and in order to facilitate mediation, the Court stayed

3  its ruling on the Plaintiff's motion.  Dkt. 112.  The Court re-noted the cross motion for class

4  certification two more times and it was currently noted for September 28, 2007.  Dkt. 162; Dkt.

5  183.

6      On June 28, 2007, Addus filed a Motion for Summary Judgment.  Dkt. 127.  On August

7  14, 2007, the Court issued an Order Granting in part and Denying in part Defendant's Motion for

8  Summary Judgment (Dkt. 127).  Dkt. 179.  As a result of that order, Plaintiff has six remaining

9  claims:

| | | |
|---|---|---|
| 10 | First Claim for Relief: | Failure to Provide Rest Periods in Washington |
| 11 | Fourth Claim for Relief: | Failure to Pay Final Wages Upon Termination in Washington |
| 12 | | |
| | Fifth Claim for Relief: | Failure to Pay Overtime in Washington |
| 13 | | |
| | Ninth Claim for Relief: | Failure to Pay Overtime in Oregon |
| 14 | | |
| | Tenth Claim for Relief: | Failure to Pay Rest Periods in Oregon |
| 15 | | |
| | Fourteenth Claim for Relief: | Failure to Pay Final Wages Upon Termination in Oregon. |
| 16 | | |

17  *Id*.

18      In addition to the class certification briefings, both parties filed motions to strike.  On

19  August 27, 2007, the Court issued an Order Granting in part and Denying in part Defendant's

20  Motions to Strike (Dkt. 134) and Denying Plaintiff's Motions to Strike (Dkt. 166).  Dkt. 182.  In

21  that order, the Court granted Defendant's motion to strike certain portions of Plaintiff's

22  Washington questionnaires.  *Id*.  Plaintiff sent more questionnaires to putative class members and

23  included responses to the questionnaires in her supplemental class certification briefing.  Dkt. 188.

24  In its supplemental response brief, Defendant renewed its motion to strike (Dkt. 134) against both

25  the original questionnaires (Dkt. 189) and the supplemental questionnaires (Dkt. 188).  Dkt. 197.

26      Plaintiff's motion for class certification and Defendant's motion to strike are now ripe for

27  decision.

28

ORDER
Page 3

# III. DISCUSSION

## A. Defendant's Motion to Strike Inadmissable Evidence.

Defendant has previously argued (Dkt. 134), filed a motion for reconsideration (Dkt. 186), and currently maintains (Dkt. 197) that Plaintiff must meet her burden for class certification based on admissible evidence.  As stated in the Court's order denying Defendant's motion for reconsideration (Dkt. 200), the authorities Defendant continues to cite are not binding on this Court and are factually distinguishable from this case.  While it does not appear that the 9th Circuit has addressed this issue, class certification is not a dispositive motion that requires Plaintiff to submit admissible evidence in support of her arguments for certification.  *Compare* Fed. R. Civ. P. 23 *with* Fed. R. Civ. P. 56.  Moreover, the Court must rule on class certification as early as practicable and the Court retains authority to amend or decertify the class until the entry of final judgment on the merits.  Fed. R. Civ. Pro. 23(c)(1).  Thus, Fed. R. Civ. Pro. 23 does not require admissible evidence in support of a motion for class certification and the Court will not create that standard.

### 1. Plaintiff's questionnaires

Defendant argues that the questionnaires submitted by Plaintiff in support of her motion for class certification (Dkt. 189; Dkt. 188) are inadmissible evidence.  Dkt. 197 at 18-19.  Plaintiff sent the questionnaires to employees based on a list provided by Defendant in pre-certification discovery.  Dkt. 166 at 17.  Even though the employees who returned the questionnaires signed the document below the statement "I understand that [the questionnaire] may be used as evidence in court", Plaintiff redacted all identifying information from the majority of the questionnaires.  *See e.g.* Dkt. 188-4 at 1.  While identifying information may be required at a later point in this litigation to address the merits of claims for unpaid wages, the Court should not rule on the merits for purposes of class certification.  *See* Fed. R. Civ. Pro. 23.  Furthermore, assuming that the Court considers the substance of the questionnaires, Defendant's interests are sufficiently protected by the Federal Rules of Civil Procedure should Plaintiff's statements to the Court be

1    inaccurate or should the questionnaires be subsequently held to be inadmissible.

2        Therefore, the Court should deny Defendants' motion to strike the questionnaires

3    submitted by Plaintiff.

4

5        **2. Declarations of Brandie James and Magaly Pruneda**

6        Defendant argues that portions of the Declarations of Brandie James (Dkt. 188-6) and

7    Magaly Pruneda (Dkt. 188-8) should be striken as inadmissible evidence because the Plaintiff has

8    not set the proper foundation.  Dkt. 197 at 19-20.  In support of its argument, Defendant cites

9    Fed. R. Civ. Pro. 602 and *Independent Living Resource v. Oregon Arena*, 982 F. Supp. 698, 784

10   (D. Or. 1997).

11       First, even after denying Defendant's initial motion to strike and Defendant's motion for

12   reconsideration of the denial of the motion to strike, the Court is still not persuaded that it must

13   apply the traditional rules and procedures applicable to civil trials to the consideration of evidence

14   in support of class certification.

15       Second, *Independent Living*, *supra*, is factually distinguishable from this case.  In

16   *Independent Living*, the court struck an affidavit that "contain[ed] mostly conclusions of law

17   dressed up as 'facts' or the affiant's interpretation of documents that need no interpretation, or

18   pure argument."  *Independent Living*, 982 F. Supp. at 784.  In this case, Ms. Pruneda's

19   statements are not conclusions of law dressed up as facts or pure arguments.

20       Therefore, the Court should deny the Defendant's motion to strike the Declarations of

21   Brandie James and Magaly Pruneda.

22

23   **B. Class Certification**

24       As a threshold matter, there is confusion as to exactly what Plaintiff has moved the Court

25   to certify.  Initially, "Plaintiff move[d] this court for an order certifying this lawsuit as a class

26   action as to each and every claim contained in the complaint."  Dkt. 98 at 10.  Plaintiff's proposed

27   order outlines each *claim* as a separate class.  Dkt. 102.  While Plaintiff does devote one page of

28

her final brief on the matter to the issue of subclasses (Dkt. 207 at 19), Plaintiff frequently mentions "every class" and separates argument sections in the briefs by referencing classes, not subclasses. *See* Dkt. 207. The inconsistent arguments of class structure are confusing and the Court is not sure whether Plaintiff has a comprehensive, discernable vision for how this lawsuit should proceed. Moreover, Plaintiff has prejudiced Defendant by raising the issue of subclasses in the final reply brief on this matter.

Furthermore, Plaintiff has proposed no plan for how to maintain this suit as six (originally seventeen) separate class actions based upon one class representative. Plaintiff offers no plan for how the case should proceed if the Court certifies some, but not all, of the proposed classes. In other words, as Defendant contends, "[c]ertifying the massive class that plaintiff seeks would create a case management nightmare." Dkt. 197 at 50.

Finally, Plaintiff has had ample time and multiple opportunities to meet her burden. Based on the parties' arguments and the original motion for class certification, the Court should consider the class certification requirements based on the motion to certify six separate classes relating to Plaintiff's first, fourth, fifth, ninth, tenth, and fourteenth claims for relief, as set forth at page 3, *infra*.

### 1. Legal Standard for Class Certification

In considering certification, the court must apply each of the applicable requirements of Fed. R. Civ. P. 23. *Clark v. Watchie*, 513 F.2d 994, 1000 (9th Cir. 1975). Plaintiff bears the burden of proving that the proposed class satisfies these requirements. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). First, Plaintiff must demonstrate numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a), ("Rule 23(a)"). Second, Plaintiff must show that the proposed class action may be maintained. Fed. R. Civ. P. 23(b), ("Rule 23(b)").

1    **2. Burden of Proof**

2    The parties dispute the Plaintiff's burden of proof for class certification.  Plaintiff contends

3    that, "[g]enerally, a well-pleaded complaint is sufficient to show that plaintiff meets all the

4    certification requirements of [Fed. R. Civ. Pro. 23]."  Dkt. 188 at 2 *citing* Newberg on Class

5    Actions § 7:26 at 81 (4th ed. 2002) ("Newberg").  Defendant counters that Plaintiff cited to

6    sections of Newberg refering "to very early, pre-discovery, prima facie showings of the purported

7    class." Dkt. 197 at 16.  While Newberg is instructive, plaintiff need not make an extensive

8    evidentiary showing so long as the court is provided enough information to form a reasonable

9    judgment on each certification requirement.  *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.

10   1975).  The parties have engaged in pre-certification discovery and have developed the record for

11   purposes of class certification.  As a result, Plaintiff has provided the Court sufficient information

12   for the Court to form a reasonable judgment on the requirements of class certification.

13   Although Plaintiff has failed to meet the requirement of maintainability under Rule 23(b),

14   the Court will briefly discuss the requirements of Rule 23(a).

15

16   **3. Class Certification Requirements Under Rule 23(a)**

17   Plaintiff has moved the court to certify six separate classes. Dkt. 98 at 10.  Plaintiff's

18   arguments that the each proposed class meets the requirements of Rule 23(a) are confusing and

19   structurally inconsistent.  *See* Dkt. 98; Dkt. 166; Dkt. 188; Dkt. 207.  For example, Plaintiff

20   argues that each separate, proposed class meets the numerosity requirement, yet Plaintiff argues

21   that, from a global standpoint, every class meets the other requirements of Rule 23(a).  *Id.*

22

23   **a. Numerosity**

24   Plaintiff must show the potential class is so numerous that joinder is impractical.  Rule

25   23(a).  "[I]mpracticability does not mean impossibility, but only the difficulty or inconvenience of

26   joining all members of the class." *Harris v. Palm Springs Alpine Est., Inc.*, 329 F.2d 909, 913-14

27   (9th Cir. 1964).

28

1    Plaintiff contends that "courts have generally held that a class of 25 or more potential

2 plaintiffs raises the presumption of numerosity." Dkt. 98 at 11; Dkt. 188 at 4.  While joinder of

3 25 plaintiffs would not be impractical, Plaintiff claims that Defendant has more than 4,000

4 employees throughout Washington and Oregon.  *Id.*  Thousands of putative class members who

5 are geographically dispersed would presumptively meet the numerosity requirement.  *See*

6 *Kirkpatrick v. Ironwood Communications, Inc.,* 2006 U.S. Dist. LEXIS 57713, at *10 (W.D.

7 Wash. 2006).

8    Plaintiff has most likely met the requirement of numerosity for each proposed class.

9

10    **b. Common Questions of Law or Fact**

11    The second prong of Rule 23(a) requires evidence that the class members share

12 common issues of law or fact.  Rule 23(a)(2).  This prong is construed permissively.  *Hanlon v.*

13 *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  A common course of conduct against all

14 class members satisfies the commonality requirement.  *See Blackie*, 524 F.2d at 902.

15 Commonality is satisfied even if there are common legal issues and diverging facts or a common

16 core of facts and differing claims to relief.  *Hanlon*, 524 F.2d at 902.

17    Plaintiff argues that Defendant has engaged in a common practice of violating wage and

18 hour laws.  Dkt. 188 at 12.  Plaintiff, however, has failed to offer evidence of that common

19 practice.  Instead, Plaintiff submitted numerous anonymous questionnaires representing individual

20 unpaid wage claims from current and former employees.  The collection of alleged individual

21 claims does not show or imply a common practice by the Defendant.

22    Plaintiff also lists 11 common issues of law and eight common questions of fact that

23 supposedly apply to the six proposed classes.  Dkt. 188 at 13.  While this shotgun approach is

24 confusing at best, there are most likely more uncommon than common issues of law and questions

25 of fact that are relevant to thousands of putative class members' unpaid wage claims.

26

27

28

ORDER
Page 8

1

       **c. Typicality**

2

       The typicality requirement is fulfilled if the plaintiffs' claims or defenses are typical of the

3 class as a whole.  Rule 23(a)(3).  This rule is permissive and requires that the plaintiff's claims be

4 reasonably co-extensive with, not substantially identical to, those of absent class members.

5 *Hanlon*, 150 F.3d at 1020.

6

       Plaintiff again relies on the implication of Defendant's consistent wage and hour violations

7 to meet the requirement of typicality.  *See* Dkt. 188 at 14; Dkt. 207 at 16-17.  Yet Plaintiff has

8 failed to show how her unpaid wage claim is reasonably co-extensive with any other putative class

9 member's unpaid wage claim.  For instance, if Plaintiff won a favorable verdict on her unpaid

10 wage claim, any other putative class member would not necessarily benefit from this result

11 because of the individual nature of Plaintiff's specific job, hours worked, and conduct during work

12 hours.

13

14

       **d. Adequacy**

15

       The representative parties adequately represent the class only if they have no conflicts of

16 interest with other members and the named plaintiffs and their counsel will prosecute the action

17 vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020.

18

       Defendant contends that Plaintiff is inadequate to represent the proposed classes because

19 she lacks both credibility and knowledge of the nature of this action.  Dkt. 197 at 42.  While there

20 may be issues with Plaintiff's credibility, the main issues of adequacy arise from the confusing

21 nature of the proposed litigation.  As previously mentioned, Plaintiff has not provided a consistent

22 framework for the proposed class structure, has not independently argued for each proposed

23 class, and has not presented a clear vision for how this litigation should proceed.

24

25

26

27

28

**4. Maintainability Under Rule 23(b)**

Plaintiff contends that every proposed class is maintainable under all three subsections of Rule 23(b).  Dkt. 98 at 27-32.  Plaintiff must only meet one of these requirements.  *See* Rule 23(b).

**a. Rule 23(b)(1)**

Litigation is maintainable as a class action if prosecution of individual suits would create a risk of either of the following:

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. . . .

Rule 23(b)(1).

Defendant argues that Plaintiff has provided no evidence that there exists a realistic possibility that putative class members would file separate suits related to these wage and hour claims.  Dkt. 197 at 45.  Plaintiff admits in her complaint that; "no single class member has the interest or incentive to individually control the prosecution of separate actions. . ."  Dkt. 1 at ¶9(a).  More importantly, Plaintiff has submitted redacted questionnaires alleging unpaid wage claims against Defendant.  *See* Wash. and Or. questionnaires.  While it may be that current employees fear retaliation by the Defendant employer, the anonymous questionnaires do not show that other potential plaintiffs would pursue individual actions related to claims for unpaid wages.

Plaintiff also contends that the proposed classes are maintainable because "[t]he suit challenges the conduct or practices of defendants who are required by law or by practical circumstances to deal with all putative class members in the same way." *citing* Newberg § 4:7, at 26; Dkt. 188 at 16-17.  Plaintiff argues that Defendant is required to comply with the wage and hour laws for every employee and, therefore, must treat every putative class member in the identical manner.  Dkt. 188 at 16.  Plaintiff, however, fails to address how separate adjudications

1  requiring Defendant to comply with wage and hour laws would result in "incompatible standards

2  of conduct" for Defendant.  Instead, Plaintiff merely concludes that "[i]f each [employee] brought

3  a separate case, in different jurisdictions, it would inevitably lead to inconsistent adjudications."

4  Dkt. 188 at 16.  In other words, Plaintiff essentially argues that if some employees brought and

5  won unpaid wage claims but other employees lost their unpaid wage claims, then those opposing

6  results would create an inconsistent standard for Defendant.  These unpaid wage claims are

7  largely fact-dependant.  Plaintiff has failed to show how the individual nature of a putative class

8  member's wage claim would conflict with the Defendant's payments of its employees in

9  accordance with wage and hour laws.

10      Plaintiff has failed to show that the proposed classes are maintainable under Rule 23(b)(1).

11

12          **b. Rule 23(b)(2)**

13      A suit is maintainable as a class action if "the party opposing the class has acted or refused

14  to act on grounds generally applicable to the class, thereby making appropriate final injunctive

15  relief or corresponding declaratory relief with respect to the class as a whole."  Rule 23(b)(2).

16      Plaintiff originally argued that the class was maintainable under Rule 23(b)(2).  Dkt. 98 at

17  28.  Although Plaintiff did not address this argument in any of her three subsequent briefs,

18  Plaintiff has not conceded it.  Dkt. 166; Dkt. 188; Dkt. 207.  The Court, however, granted

19  Defendant's motion for summary judgment on Plaintiff's claims for injunctive relief.  Dkt. 179.  In

20  addition, Plaintiff lacks standing for declaratory relief because Defendant terminated Plaintiff in

21  2005.  Bell Dep. at 20-21.

22      Plaintiff has failed to show that Defendant acted or refused to act on grounds generally

23  applicable to each proposed class.  Therefore, the proposed classes are not maintainable under

24  Rule 23(b)(2).

25

26

27

28

1      **c. Rule 23(b)(3)**

2          A suit is maintainable as a class action if "the questions of law or fact common to the

3   members of the class predominate over any questions affecting only individual members, and [] a

4   class action is superior to other available methods for the fair and efficient adjudication of the

5   controversy." Rule 23(b)(3).  In making this finding, the court considers the following:

> (A) the interest of members of the class in individually controlling the prosecution or
> defense of separate actions; (B) the extent and nature of any litigation concerning the
> controversy already commenced by or against members of the class; (C) the desirability or
> undesirability of concentrating the litigation of the claims in the particular forum; (D) the
> difficulties likely to be encountered in the management of a class action.

9   *Id.*  Predominance and superiority ensure that class treatment will "achieve economies of time,

10  effort, and expense, and promote . . . uniformity of decision as to persons similarly situated,

11  without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*

12  *Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23 advisory

13  committee's notes (1966)).

14          Plaintiff has failed to show that common issues predominate over other questions in this

15  litigation and, therefore, the Court should not reach the issue of superiority.

16

17                          **1. Predominance**

18          "Implicit in the satisfaction of the predominance test is the notion that the adjudication of

19  common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d

20  1227, 1234 (9th Cir. 1996).

21          Plaintiff advances three arguments for why common issues predominate: (1) Defendant

22  operates its business using standardized practices and procedures, (2) hourly employees perform

23  the same range of duties: care for the elderly or infirm, both in the field and in the office, and (3)

24  Defendant consistently violates state wage and hour statutes to keep employee work hours low

25  and profit margins high.  Dkt 188 at 16.

26          First, Plaintiff has not produced evidence of a standardized practice or procedure.  Plaintiff

27  has produced numerous anonymous questionnaires that allege unpaid wage claims by Defendant's

28

1    current and former employees.  *See* Wash. and Or. questionnaires. While Plaintiff argues that

2    these questionnaires imply Defendant has a common practice of wage and hour violations, the

3    documents present only varying, individualized issues.  Moreover, because the questionnaires are

4    anonymous, Plaintiff has failed to show whether Defendant's alleged violations stem from one

5    local office or if they are geographically widespread throughout Washington and Oregon.

6         Second, Plaintiff has failed to show how the employees' common duties create issues that

7    predominate in this litigation.  Plaintiff again attempts to imply that Defendant instituted a

8    common practice of wage and hour violations based on specific job requirements.  While an

9    employee may have to constantly attend to his or her patient, this does not necessarily mean that

10   Defendant required every employee to forego meal periods or rest breaks.  Additionally, the job

11   duties do not guarantee that every employee worked the prerequisite time to qualify for a meal

12   period or rest break.  Regardless of the job duties, it is important to note that, in making this

13   argument, Plaintiff delineates another set of individual issues by separating office employees from

14   field employees.

15        Finally, Plaintiff's contention that Defendant's consistent violations keep employee work

16   hours low and profit margins high is conclusory and not relevant to the analysis of whether

17   common issue predominate in this litigation.

18        Therefore, the Court should not grant Plaintiff's motion for class certification because

19   Plaintiff has failed to show that common issues predominate this litigation.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27

28

ORDER
Page 13

1

**IV. ORDER**

2

    Therefore, it is hereby

3

    **ORDERED** that the Plaintiff's Cross Motion for Class Certification Under FRCP 23(c)(1)

4

(Dkt. 98) is **DENIED**.  The Court will issue a modified Minute Order Regarding Joint Status

5

Report (*See e.g.* Dkt. 2).

6

    The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel

7

of record and to any party appearing pro se at said party's last known address.

8

    DATED this 12th day of October, 2007.

9

10

11

ROBERT J. BRYAN
United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28